### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **HUGH COATES, et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **VS.** | ) | **Civil Action No.  SA-06-CV-773-XR** |
| | ) | |
| **CHARLES HALL, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

On this date, the Court considered Defendant Chris Ring's motion to dismiss in his individual capacity (Docket No. 5) and the remaining Defendants' motion to dismiss in their individual and official capacities (Docket No. 6).  The motions are GRANTED. For the reasons discussed below, Plaintiffs' federal takings claim, procedural due process claim, substantive due process claim, and equal protection claim are DISMISSED WITHOUT PREJUDICE because they are not ripe for adjudication.  Plaintiffs' section 1985 claim is DISMISSED WITH PREJUDICE for failure to state a claim upon which relief may be granted.  The Court refuses to exercise supplementary jurisdiction over Plaintiffs' state law tortious interference claims; therefore, those claims are DISMISSED WITHOUT PREJUDICE.  The Court expresses no opinion on Defendants' quasi-judicial and quasi-legislative absolute immunity arguments.  The Clerk is instructed to close this case.

### I. Factual & Procedural Background

Plaintiffs Hugh Coates and Dennette Coates have brought suit against the Kenney County Groundwater Conservation District ("District") and individual directors of the District.  This lawsuit

is brought pursuant to 42 U.S.C. §§ 1983, 1985, 1988, the 5th and 14th amendments of the United States Constitution, and Texas common law.  Plaintiffs claim federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law tortious interference claims.

Plaintiffs allege that Defendants violated their constitutional rights by willfully interfering with their groundwater property rights, and they allege that the District is liable because of its policy of encouraging, tolerating, permitting, and ratifying a pattern of interfering with Plaintiff's groundwater property rights.

The individual Defendants were at all relevant times directors of the District.  Plaintiffs allege that the individual Defendants were acting under color of law and were the ultimate policy-making officials of the District.  Plaintiffs are suing the individual Defendants in both their official and individual capacities.  Plaintiff state that "the actions of the individual Defendants were done in order to deprive the Plaintiffs of their property rights for the purposes of personal gain of said Defendants, intentionally, knowingly, with evil motive, with reckless or callous indifference to the federally protected rights of the Plaintiffs and/or maliciously.  Plaintiffs allege that no reasonable individual would have acted in the manner the individual Defendants did in the permitting process."

The District was legislatively created in 2001 by House Bill 3243.  In January of 2002, the voters of Kinney County approved the formation of the District at the confirmation election.  Plaintiffs allege that unless eclipsed by legislation, landowners in Texas have a freely assignable, vested right to pump water under their land—the common law "rule of capture."  Plaintiffs allege that the individual Defendants and the District violated their constitutional rights in handling their applications for Existing and/or Historic Use Permits to withdraw groundwater.

Texas Water Code § 36.0015 provides that ground water conservation districts may be

created for the purpose of preservation, protection, recharging, and prevention of waste of ground water. The rule making power of such ground water districts is determined by Water Code § 36.101, which states that "a district may make and enforce rules, including rules limiting ground water production based on tract size or the spacing of wells, to prove for conserving, preserving, protecting, and recharging of the ground water . . . ."

Plaintiffs applied for permits to pump groundwater under the rules of the District. Pursuant to then existing rules, application for Historic Use Permits were due on or before April 1, 2003. This deadline was ultimately extended to October 1, 2003 and again extended to December 1, 2003. According to District Rule 9.09, owners of non-exempt wells completed and operational before December 31, 1991 and that produced ground water between January 1, 1960 and December 31, 1991 were required to make applications for a Historic Use Permit by that date.

Plaintiffs allege that the District was required to issue Existing and Historical Use Permits ("EHUs") to Plaintiffs that authorized them to withdraw an amount of ground water equal to their "maximum historic use." The District's rules defined "maximum historic use" and an "applicant's actual maximum beneficial use of ground water from an aquifer excluding waste during any one full calendar year of the existing and historic use period." District Rule 1.05.

The District hired Steve Walthour to serve as the District's acting general manager for the purpose of evaluating the applications for administrative and technical completeness and to provide expertise to the District in the permitting process in determining the amount of water an applicant should be permitted. At the time he was hired by the District, Walthour was a full-time employee of the Edwards Aquifer Authority ("EAA") and was in charge of overseeing the EAA's permitting process. In that capacity, Walthour supervised the processing, evaluation, and issuance of

approximately one thousand EAA Historic Use Permits.

On June 28, 2004, Walthour declared the Plaintiffs' applications administratively and technically complete under the District's rules and provided each of the Applicants a draft permit. The District set the Plaintiff's application for preliminary hearing on August 12, 2004 ("August 2004 hearing"). Pursuant to District Rule 17.04(A), "interested persons . . . . may appear at the hearing [and] present evidence, exhibits, or testimony or make an oral presentation as determined by the Board." At the August 2004 hearing, Plaintiffs objected to the granting of party status to protestants who allegedly made no demonstration that they were "interested persons." The District overruled the Plaintiffs' objection and granted party status to any person who desired to protest the Plaintiffs' applications. The August 2004 hearing was a preliminary hearing, which identified interested parties who would participate in the final adjudicatory hearing to be held during October of 2004.

Plaintiffs allege that the District adopted "procedural guidance" rules without complying with the statutory rule-making process and the District's own rules regarding rule-making. These procedural guidance rules incorporated a complete prohibition on discovery, imposed a 45 minute limit on the applicant's presentation of a direct case and a 30 minute limit on the applicant's cross-examination of the District's expert and all of the protestant's witnesses. Furthermore, these rules required applicants to rest their case before obtaining any information on the protestants' claims and did not allow rebuttal evidence. The District allegedly declared for the first time at the hearing that affidavit testimony would be inadmissible if objected to unless the affiant was present to testify.

Plaintiffs and other interested parties participated in the final adjudicatory hearing before the District in October of 2004. Plaintiffs allege that at a hearing before the District in October of 2004, they presented credible scientific and factual evidence in support of their permit application numbers

EH20-ET-2004-0023 and EH21-ET-2004-0024, which established a maximum historic use of 12,207 acre feet.

Shortly following the October 2004 hearing on Plaintiffs' applications, Walthour prepared a hearing report pursuant to District Rule 17.08. The board members voted on Plaintiffs' applications on January, 28, 2005. On application EH20-ET-2004-0023, the Plaintiffs argued that they established historical entitlement to 9,608 acre-feet. Walthour recommended that the permit be issued in the amount of 2,070 acre-feet, but the District voted to issue an application in the amount of 2,070 cubic-feet. On application EH21-ET-2004-0024, Plaintiffs argued that they established historical entitlement to 2,689 acre-feet. Walthour recommended issuance of a permit for 1,444.58 acre-feet, but the District voted to issue a permit in the amount of 518 acre-feet.[1] In rejecting Plaintiffs' and Walthour's proposals, the District adopted groundwater withdraw amounts that largely tracked the opinion of Dr. Al Blair, a groundwater consultant who testified at the October 2004 hearing on behalf of the protestants.

Texas Water Code § 36.114 and the District's rules mandate that the District take final action on the application within 35 days of the hearings on each application. District Rule 9.01(D)(3)(c). The District failed to issue any permits to the Plaintiffs, and the District has suspended consideration of all EHUs until such time as the Board knew the total amount of water recommended for approval and permitting by its expert and presiding officer. In state court litigation filed in Kenney County

_____

[1]Conflicting evidence has been submitted on the total withdraw amounts approved by the Board. The Second Amended Petition and Petition for Writ of Mandamus and Application for Injunctive Relief filed in state court stated that the Board approved Plaintiffs' existing use withdraw in the amount of 717 acre-feet for application EH20-ET-2003-00023 and 518 acre-feet for application EH21-ET-2004-00024. The Board approved Plaintiffs' historic use withdraw in the amount of 2,070 acre-feet for application EH20-ET-2003-00023 and 518 acre-feet for application EH21-ET-2004-00024.

-5-

District Court, Judge Pennington ruled that the 35 day deadline is not discretionary.  Plaintiffs argue that the permits should have been issued no later than 35 days after the October 2004 hearing.

Plaintiffs allege that the board members who voted to ignore Walthour's permit recommendations were candidates on the "Save Our Water" ticket.  Plaintiffs allege that the Board committed "blatant acts of cronyism" by issuing permits to those aligned with the "Save Our Water" ticket. Plaintiffs allege that Chris Ring, who is a director of the District and an individual Defendant in this lawsuit, was awarded a permit for more than double the amount recommended by the District's experts.  Plaintiffs allege that since its inception, the Board has amended the Board's rules six times so as to favor board members and their supporters.  Plaintiffs allege that Defendant Tootsie Herndon stated publicly that instead of permitting based on Maximum Historic Use, he preferred to grant almost everybody three acre-feet of water.

Plaintiffs allege that the individual Defendants violated the conflict-of-interest rules found under Texas Water Code § 36.058.  Plaintiffs allege that board members participated in deliberations and decisions on matters in which they were personally interested by favoring those applicants who were related to or supporters of members of the Board and opposing those applicants who were not.  Plaintiffs allege that Darlene Shahan, the District's General Manager, used her position to deny and obstruct permits for deserving landowners and facilitating those who supported the Board.

Plaintiffs conclude that Defendants engaged in illegal and unconstitutional practices, including (1) failing to act in a fair and impartial manner and in accordance with the rules and regulations of the District in the issuance of Plaintiff's EHUs; (2) knowingly permitting conflicts-of-interest to taint the water permitting process; (3) knowingly allowing blatant acts of cronyism and favoritism to influence the water permitting process; (4) selectively enforcing rules to allow

favorable permitting to some and not others; (5) knowingly allowing an incompetent and unqualified District Manager to occupy the position; and (6) failing to issue permits to Plaintiffs in accordance with state law and District Rules.

Plaintiffs sued the individual Defendants for (1) adopting and implementing the "procedural guidance" rules without following the prescribed rule-making procedures; (2) allowing conflicts-of-interest to deny their rights under Texas state law; (3) denying them equal protection of the laws; (4) taking their property without just compensation; and (5) tortiously interfering with their property rights. Plaintiffs sued the District for (1) denying them substantive and procedural due process; (2) denying them of equal protection of the laws; (3) taking their property without just compensation; and (5) tortiously interfering with their property rights.

Plaintiffs seek to recover money damages and attorney's fees from all Defendants, and they seek to recover punitive damages from the individual Defendants.

Defendant Chris Ring filed a motion to dismiss in his personal capacity (Docket No. 5). Ring argues that he has quasi-judicial, quasi-legislative, and qualified immunity to Plaintiffs' claims. Ring argues that a violation of state law is alone insufficient to state a constitutional claim under the Fourteenth Amendment. Ring further observes that state law and constitutional challenges to the official actions of Groundwater Conservation Districts are successfully being litigated in state courts. Ring argues that Plaintiffs are attempting to transform a state law matter into a federal case.

The remaining Defendants also filed a motion to dismiss (Docket No. 6). Defendants note that Plaintiffs, along with a number of other landowners, have already sued the District and General Manager Shahan in state district court in Kinney County, Texas. Defendants argue that the takings claim is not ripe because Plaintiffs have not demonstrated that they have received a final decision

regarding their applications, availed themselves of available and adequate procedures to obtain compensation, and been denied just compensation. For the same reasons, Defendants argue that the procedural due process claim is not ripe. Defendants argue that the substantive due process claim is inappropriate when an explicit constitutional deprivation has been identified—i.e. the takings claim. Defendants argue that the equal protection claim must fail because Plaintiffs have not alleged that the District or its directors have treated some applicants differently from other similarly situated applicants. Defendants argue that they are entitled to absolute quasi-judicial and quasi-legislative immunity from official actions taken during the permitting process, and they are entitled to qualified immunity to the extent that the absolute immunity does not shield their actions. Defendants argue that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims. Finally, Defendants argue that the Court should stay this proceeding pursuant to *Burford v. Sun Oil* pending resolution of the state litigation.

On February 20, 2007, the Court held a hearing on Defendants' pending motions to dismiss. Defendants testified that after the January 2005 vote on Plaintiffs' applications, Plaintiffs refused to pay certain fees that were required by the District in order to obtain a permit. This permit would have reflected groundwater withdraw amounts approved by the District at the January 2005 hearing. Defendants argue that the District's rulings on Plaintiffs' applications are not final for purposes of appellate review in state court until Plaintiffs pay the required fees, obtain the permits, request a rehearing, and then obtain a ruling on the request for rehearing.

The state litigation involved two phases that are relevant to this federal litigation. On April 24, 2006, Judge Pennington granted partial summary judgment for Plaintiffs and ruled that the 35 day deadline for the issuance of a permit is mandatory (first phase). Defendants testified that this

ruling disposed of all issues except attorney's fees.  The first phase of the state litigation did not challenge the validity of the individual permits; it merely sought to clarify the law regarding the time-frame and procedure for issuance of the permit.

The first phase dealt with the procedure for issuance of a permit; the second phase dealt with the validity of the groundwater withdraw amounts on those permits.  After Judge Pennington ruled on the motion for summary judgment, Plaintiffs filed a second amended petition that challenged, *inter alia*, the validity of the individual permits themselves (second phase).  In response, the District filed a plea to the jurisdiction, arguing that the state court does not have authority to rule on the validity of individual permits until those permitting decisions are final.  The District argues that the Coates have never received a final decision for purposes of state appellate review because they never paid the fees, obtained the permit, requested a rehearing, and then obtained a ruling on their request for rehearing.  Judge Pennington denied the plea to the jurisdiction.  The District filed an interlocutory appeal on the denial of their plea to the jurisdiction, and that interlocutory appeal is currently pending before the Fourth Court of Appeals in San Antonio on an expedited briefing schedule.

At the hearing, the parties vigorously disputed whether Plaintiffs could withdraw water from their wells pending resolution of the state litigation.  Defendants point to District Rule 9.10(C), which states that "[d]uring the interim period of time before the issuance or denial of the Historic Use Permit, an applicant . . . may continue to produce groundwater from the well in an amount not to exceed in any calendar year the applicant's Maximum Historic Use as designated in the applicant's Historic Use Permit application or most recent amendment thereto." Defendants argue that Plaintiffs have not received a final decision on their permit because they never paid the fees, obtained the

permit, requested a rehearing, and then obtained a ruling on their request for rehearing.  Defendants argue that Plaintiffs have not been harmed because District Rule 9.10(C) allows them to produce their Maximum Historic Use of groundwater until their application is denied.  The District testified at the hearing that it would not take any civil enforcement action against the Plaintiffs until the state litigation is resolved.  Records submitted to the Court indicate that Plaintiffs in fact produced 1,100 acre-feet of water in 2003, 200 acre-feet in 2004, 200 acre-feet in 2005, and 500 acre-feet in 2006.

In response, Plaintiffs cite to Texas Water Code § 36.115(d), which gives the District the authority to impose a fine on parties who withdraw water without first obtaining a permit.  Plaintiffs also cite to the District Rule that allows for the imposition of a $10,000 per day fine if a party withdraws water from a well without a permit.  Defendants argue that Texas Water Code § 36.117(c) allows a District to exempt wells from the requirement of obtaining a drilling permit, which the District has done in District Rule 9.10(C).  In response to the Court's concern that Plaintiffs have not yet suffered any legally cognizable injury, Plaintiffs argued that the state law is unclear and they are under threat of a $10,000 per day fine.

Plaintiffs argue that ripeness is not an issue because the issuance of a permit within 35 days after the hearing was a ministerial, non-discretionary act.  Additionally, Plaintiffs received a letter from Shahan stating that the January 2005 decision was final.  Shahan had written a letter to Plaintiffs' attorney in 2005 stating that "[t]he decision on this permit was made on January 28, 2005.  The deadline for filing any motion for rehearing was February 17, 2005.  A motion for rehearing was timely filed and overruled by process of law on May 18, 2005."  In contrast, Defendants' attorney stated at the hearing that time period for request for rehearing begins to accrue from date permit issued, not date when decision made.

-10-

Defendants concluded the hearing by arguing that Plaintiffs' claims are not ripe for adjudication because a permit was never issued and a final decision was never reached. In particular, the takings claim is not ripe because the "finality" and "denial of compensation" requirements have not been satisfied. The procedural due process claims are not ripe for the same reasons. There has been no equal protection violation because all applicants have been treated similarly. Finally, there has been no deprivation of substantive due process because there has been no deprivation of property. Defendants reassert that if the Court does not grant the motions to dismiss based on the justiciability doctrines, then they are entitled to absolute quasi-judicial and quasi-legislative immunity.

## II. Legal Analysis

### A.      Legal standard governing motion to dismiss.

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The issue is not whether the plaintiff will prevail but whether the plaintiff is entitled to pursue his complaint and offer evidence in support of his claims. *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996). The Court may not look beyond the pleadings in ruling on the motion. *Baker*, 75 F.3d at 196. Motions to dismiss are disfavored and are rarely granted. *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999). Dismissal should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. at 164 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). However, the Court does not accept conclusory allegations or unwarranted deductions of fact as true. *Tuchman v. DSC Commc'ns Corp*., 14 F.3d 1061, 1067

(5th Cir. 1994).

**B.     A discussion of state law is necessary to determine the applicability of the federal justiciability doctrines.**

**1.     Chapter 36 of the Texas Water Code.**

Chapter 36 of the Texas Water Code and Section 59, Article XVI of the Texas Constitution allow for the creation of Groundwater Conservation Districts ("GCDs") in Texas.  Tex. Water Code § 36.0015, 36.011.  A GCD is a political subdivision exercising state powers and it stands upon the same legal footing as a county.  *South Plains Lames R.R., Ltd. v. High Plains Underground Water Conservation Dist. No. 1*, 52 S.W.3d 770, 774 (Tex. App.–Amarillo 2001, no pet.).[2]  Although the Texas Legislature has recognized that land owners have property rights in the groundwater located beneath their land, the Legislature has stated that "those [property] rights may be limited or altered by rules promulgated by a [groundwater conservation] district." *Id.* at § 36.002; *See Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 625 (Tex. 1996) (describing the historical development of groundwater property rights in Texas).

A GCD may sue and be sued in Texas state courts. *Id.* at § 36.066.  A GCD may also make and enforce district rules, including rules limiting groundwater production based on tract size or the spacing of wells, to provide for conserving, preserving, protecting, and recharging of the groundwater. *Id.* at § 36.101.  A GCD may enforce the provisions of Chapter 36 or its own district rules by instituting a lawsuit to obtain injunctive relief and/or reasonable civil penalties for breach

---

[2]The Court notes that counties are not entitled to Eleventh Amendment Immunity and may be sued under 42 U.S.C. § 1983.  *Crane v. State of Tex.*, 759 F.2d 412, 415 (5th Cir. 1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 124 n.34 (1984). However, the Court expresses no opinion on Defendants' quasi-judicial and quasi-legislative absolute immunity arguments.

of any district rule, not to exceed $10,000 per day.  *Id.* at § 36.102. Although a GCD may exercise

the power of eminent domain to acquire by condemnation a fee simple or other interest in property,

it may not exercise this power to acquire rights to groundwater, surface water, or water rights.  *Id.*

at § 36.105.

A GCD shall require a permit for the drilling, equipping, operating, or completing of wells,

and it shall promulgate District Rules that shall determine each activity regulated by the district for

which a permit or permit amendment is required.  *Id.* at §§ 36.113(a), 36.114(a), 36.115  A GCD

may exempt wells from the requirement of obtaining a drilling permit, an operating permit, or any

other permit required by this chapter or the district's rules. *Id.* at § 36.117(a).

A GCD may set fees for administrative acts of the district, such as filing applications for

permits. *Id.* at § 36.205(a).  Administrative fees may not unreasonably exceed the cost to the district

of performing the administrative function for which the fee is charged. *Id.* A GCD may also assess

production fees based on the amount of water authorized by permit to be withdrawn from a well or

the amount actually withdrawn. *Id.* at § 36.205(c).

A person, firm, corporation, or association of persons affected by and dissatisfied with any

provision or with any rule or order made by a district is entitled to file a lawsuit against the district

or its directors to challenge the validity of the law, rule, or order.  *Id.* at § 36.251.  The suit shall be

filed in a court of competent jurisdiction in any county in which the district or any part of the district

is located. *Id.* The suit may only be filed after all administrative appeals to the district are final. *Id.*

The suit must be expedited. *Id.* at § 36.252.  The burden of proof is on the petitioner, and the

challenged law, rule, order, or act shall be deemed prima facie valid. *Id.* at § 36.253. The review on

appeal is governed by the substantial evidence rule as defined by Texas Government Code §

2001.174. *Id.* The provisions of Chapter 36 do not affect other legal or equitable remedies that may

be available. *Id.* at § 36.254.  Recently, the Fourth Court of Appeals in San Antonio described the

nature of substantial evidence review under section 36.253 of the Texas Water Code:

> Section 2001.174 of the Government Code requires a reviewing court to reverse or
> remand if the complaining party's substantial rights have been prejudiced because the
> administrative findings, inferences, conclusions, or decisions are: in violation of a
> constitutional or statutory provision; in excess of the agency's statutory authority;
> made through unlawful procedure; affected by other error of law; not reasonably
> supported by substantial evidence considering the reliable and probative evidence in
> the record as a whole; or are arbitrary or capricious or characterized by abuse of
> discretion or clearly unwarranted exercise of discretion. *See* TEX. GOV'T CODE ANN.
> § 2001.174(2)(A)-(F) (Vernon 2000). Judicial review under section 2001.174 is
> conducted by a trial judge sitting without a jury and is confined to the administrative
> record. TEX. GOV'T CODE ANN. § 2001.175(e) (Vernon 2000).

*In re Edwards Aquifer Authority*, No. 04-06-00254-CV , 2006 WL 2955762 (Tex. App.–San

Antonio 2006, no pet.).

**2.     District Rules.**

Pursuant to the rulemaking authority granted to GCDs under section 36.101 of the Texas

Water Code, the Kinney County Groundwater Conservation District ("District") has promulgated

its own District Rules. If a person has violated, is violating, or threatening to violate any provision

of the District Act or any rule regulation, permit, Board order, or other order of the District, the

Board may institute a suit in the name of the District for injunctive relief and/or reasonable civil

penalties for breach of any district rule, not to exceed $10,000 per day. District Rule 5.04. Unless

an exclusion or exemption applies, a groundwater rights holder must obtain an Existing Use Permit,

a Historic Use Permit or a Regular Permit before a well may be drilled or operated and before

groundwater may be withdrawn.  District Rule 9.01(A).

The burden of proof is on the permit applicant to establish that he is entitled to have his

-14-

permit application granted.  District rule 9.01(D)(3)(a).  The District has promulgated a non-exclusive list of seven factors to consider in making its permit determination. *Id.* The District "shall act on the application" within 35 days after the date of the conclusion of the hearing. District Rule 9.01(D)(3)(c).  "Upon approval of an application and receipt of all applicable fees, the District will issue a permit to the applicant." *Id.* The applicant's right to produce groundwater shall be limited to the extent and purposes stated in the permit. *Id.* In denying an application for a permit, the Board shall issue an order setting forth its reasons for such denial. *Id.*

During the interim time period before the issuance or denial of the Historic Use or Existing Use Permit, an applicant for those two types of permits may continue to produce groundwater from the well in an amount not to exceed in any calendar year the applicant's Maximum Historic Use as designated in the applicant's Historic Use or Existing Use Permit application or most recent amendment thereto. District Rule 9.09(C), 9.10(C).  The validity of a Historic Use or Existing Use Permit is contingent upon payment by the permittee of the applicable fees set forth under Section 14 of the District Rules. District Rule 9.09(K), 9.10(K).  After a permit or application is declared void for failure to make payment of permit fees, the District may pursue available legal remedies in state court. District Rule 14.07.  The permittee must also install a meter on each permitted well. District Rule 9.09(J), 9.10(J).

At the hearing, "any interested person" may present evidence, exhibits, or testimony on a permit application. District Rule 17.04(A).  The Presiding Officer may prescribe reasonable time limits for the presentation of evidence and oral argument, and the Presiding Officer may exclude evidence that is irrelevant, immaterial, or unduly repetitious. District Rule 17.04(C), 17.05(B).  Within 35 days after the final hearing date is concluded, "the Board must take action on the subject

matter of the hearing." District Rule 17.09. A decision of the Board concerning a hearing matter may be appealed by requesting a rehearing before the Board "within 20 calendar days of the date of the Board's decision." District Rule 17.10. A rehearing request is mandatory with respect to any decision or action of the Board before any appeal to state District Court. *Id.* The Board's decision is final if no request for rehearing is made within the specified time, upon the Board's denial of the request for rehearing, or upon rendering a decision after rehearing. *Id.* The failure of the Board to grant or deny the request for rehearing within 90 calendar days of the date of submission shall constitute a denial of the request. *Id.*

**C.    Plaintiffs have standing to pursue their federal claims.**

To satisfy the "case" or "controversy" requirement of Article III, which is the "irreducible constitutional minimum" of standing, a plaintiff must, generally speaking, demonstrate that he has suffered "injury in fact," that the injury is "fairly traceable" to the actions of the defendant, and that the injury will likely be redressed by a favorable decision. *Bennett v. Spear*, 520 U.S. 154, 162 (1997). The Supreme Court has defined "injury in fact" as "an invasion of a legally protected interest which is (1) concrete and particularized and (2) actual or imminent, not conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A particularized injury must affect the plaintiff in a personal and individual way. *Id.* at 561 n.1. The party invoking federal jurisdiction bears the burden of establishing the injury element. *Id.* at 561.

It is uncontroverted that Plaintiffs have not yet been issued a permit by the District. District Rule 9.09(C) and 9.10(C) allow Plaintiffs to continue pumping water up to the Maximum Historic Use designated in their two permit applications. Defendants' counsel testified at the hearing that Plaintiffs could pump water under District Rules 9.09(C) and 9.10(C) until a permit was issued.

-16-

Defendants' counsel also testified at the hearing that the District would not pursue any civil enforcement actions against Defendants for illegal groundwater pumping until the state litigation is resolved. The evidence indicates that Plaintiffs have continued to pump from their wells even after the January 2005 Board vote. At this time, the Court doubts whether Plaintiffs have established entitlement to economic damages for the denial of any groundwater.

Nevertheless, the Court finds that Plaintiffs have alleged non-economic damages sufficient to confer standing. The Supreme Court has held that a denial of procedural due process is actionable for nominal damages without proof of actual injury. *Carey v. Piphus*, 435 U.S. 247, 266 (1978). Additionally, Plaintiffs may recover compensatory damages under section 1983, including damages for mental anguish and emotional distress. *Id.* at 264-65. Although punitive damages are not recoverable from the District under section 1983, the Supreme Court has held that punitive damages are available against individual state actors when the official's conduct is shown to be motivated by evil motive or intent, or when it involves a reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Consequently, even if Plaintiffs have not suffered economic damages based on deprivation of groundwater, the Court believes that they have alleged non-economic damages sufficient to confer standing.

**D.    The Court believes that the *Burford* abstention doctrine is applicable to the facts of this case. Nevertheless, this Court cannot invoke the *Burford* abstention doctrine to dismiss the case without prejudice because Plaintiffs seek legal relief instead of equitable relief on their federal claims.  Furthermore, this Court cannot invoke the *Burford* abstention doctrine to stay the case pending resolution of the state court litigation because Texas state courts will not grant the declaratory relief sought in Plaintiffs' state court litigation as long as the Court maintains this federal case on its docket.**

The *Burford* abstention doctrine stands as a narrow exception to the rule that federal courts "have a strict duty to exercise the jurisdiction that is conferred upon them by Congress."

*Quackenbush v. Allstate Ins. Co*., 517 U.S. 706, 716 (1996). The Fifth Circuit observed in *Webb v. B.C. Rogers Poultry, Inc.* that the *Burford* abstention doctrine requires federal courts to "weigh the federal interests in retaining jurisdiction over the dispute against the state's interests in independent action to uniformly address a matter of state concern, and to abstain when the balance tips in favor of the latter." 174 F.3d 697, 700-01 (5th Cir. 1999).

Although the Supreme Court has held that a *Burford* dismissal is not appropriate in damages actions, it left open the possibility that a *Burford* stay might be appropriate if the other *Burford* elements are satisfied. Unlike an outright dismissal of a federal action, a stay of federal proceedings on abstention grounds is best viewed as a "postponement of decision for its best fruition." *Quackenbush*, 517 U.S. at 720. Thus, a stay is typically warranted to await resolution of a difficult, potentially controlling issue of state law. *See id.; see also Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 27 (1959) ("We have increasingly recognized the wisdom of staying actions in the federal courts pending determination by a state court of decisive issues of state law."). The Supreme Court has identified a distinction "between abstention-based remand orders or dismissals and abstention-based decisions merely to stay adjudication of a federal suit." *Quackenbush*, 517 U.S. at 720; *see also Holden v. Connex-Metalna Management Consulting GmbH*, 302 F.3d 358, 363 n.7 (5th Cir. 2002).

In *Quackenbush*, the Supreme Court determined that an action seeking damages never warrants remand or dismissal on abstention grounds. The Court examined the foundation and history of abstention doctrines, and *Burford* abstention in particular, finding that the power to abstain originated in "the discretion federal courts have traditionally exercised in deciding whether to provide equitable or discretionary relief." *Quackenbush*, 517 U.S. at 730. The Supreme Court has

extended the abstention doctrines "to all cases in which a federal court is asked to provide some form of discretionary relief." *See id.* at 718 (recognizing that "the authority of a court to abstain from exercising its jurisdiction extends to all cases in which the court has discretion to grant or deny relief"). A damages action, however, allows the court no discretion and may not be remanded. *Id.* at 731. In this case, Plaintiffs only seek legal relief in the form of money damages; they do not seek equitable relief.[3]  Therefore, a *Burford* dismissal without prejudice is inappropriate in this case.[4]

Although remanding or dismissing a damages case based on *Burford* abstention is inappropriate, the Supreme Court noted that a federal court could stay an action pending resolution in state court of an issue relevant to the federal case if the *Burford* doctrine called for abstention. *Id.*; *see also Webb v. B.C. Rogers Poultry, Inc.*, 174 F.3d 697, 701 n.5 (5th Cir. 1999).

In applying *Burford* abstention, the court does not necessarily consider whether the cause of action is based on state or federal law, but instead looks at whether the plaintiff's claim is entangled in an area of state law that must be untangled before the federal case can proceed. *Sierra Club v. City of San Antonio*, 112 F.3d 789, 795 (5th Cir. 1997). Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders

---

[3]*Pullman* abstention might also be applicable to this case because resolution of Plaintiffs' federal constitutional questions might be obviated if the state courts were given the opportunity to interpret ambiguous state law.  *See Quackenbush*, 517 U.S. at 716-17. The Court believes that the *Quackenbush* dismissal rule applies to all forms of abstention, including *Pullman* abstention. *Id.* at 727-28 ("[T]he power to dismiss under the *Burford* doctrine, *as with other abstention doctrines . . . derives from the discretion historically enjoyed by courts of equity*") (emphasis added); *see id.* at 719 ("[W]e have applied abstention principles to actions "at law" only to permit a federal court to enter a stay order that postpones adjudication of the dispute, not to dismiss the federal suit altogether").

[4]The Court respectfully disagrees with our sister court's holding to the contrary.  *See Day v. Edwards Aquifer Authority*, No. SA-03-CV-429-FB, 2004 WL 1118721, *6 (W.D. Tex. March 26, 2004).

of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial import whose importance transcends the result in the case at bar; or (2) where the exercise of federal review of the questions in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 588 (5th Cir. 1994).

Five factors have been identified to consider in making this determination: (1) whether the cause of action arises under state or federal law; (2) whether the case requires inquiry into unsettled issues of state law or into local facts; (3) the importance of the state interest involved; (4) the state's need for a coherent policy in the area; and (5) the presence of a special state forum for judicial review. *Wilson*, 8 F.3d at 314.

The Fifth Circuit has already applied the *Burford* doctrine to Texas groundwater regulation in *Sierra Club v. City of San Antonio.* In *Sierra Club*, the Fifth Circuit vacated a preliminary injunction which limited the withdrawal of water from the Edwards Aquifer, finding that the Sierra Club had not demonstrated a likelihood of success on the merits "because abstention appears so manifestly warranted under *Burford*." 112 F.3d at 793. The Sierra Club sought injunctive relief from the federal court, not legal relief.

In a strikingly similar case to the one at bar, *Williamson v. Guadalupe County Groundwater Conservation Dist.*, 343 F. Supp.2d 580 (W.D. Tex. 2004), our sister district court ordered a *Burford* stay of Plaintiffs' money damages claims. 343 F. Supp.2d at 583. In making this ruling, the district court noted that "[w]hile the Court may not dismiss actions for damages based on abstention principles, the Court may stay or postpone the adjudication of such actions. *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 719-721 (1996)."

-20-

The Court would prefer to issue a *Burford* stay of this case pending resolution of the novel

state law issues involved in the pending state court litigation.  However, the Court finds that it is

prevented from issuing a *Burford* stay based on the Texas Supreme Court case of *United Services*

*Life Ins. Co. v. Delaney*, 396 S.W.2d 855 (Tex. 1965).  Plaintiffs' second amended petition in state

court seeks a writ of mandamus ordering the Board to refund applicant overpayments, a declaratory

judgment addressing myriad state law claims, and injunctive relief.  *Delaney* held that a Texas state

court "cannot grant declaratory relief under state law if a federal court retains jurisdiction over the

federal claim."  *Harris County Commissioners Court v. Moore*, 420 U.S. 77, 89 n.14 (1975).  In

*Delaney*, the Texas Supreme Court held that the federal court's reservation of jurisdiction to enter

a final judgment rendered the state court proceedings advisory in nature.  *Barrett v. Atlantic Richfield*

*Co.*, 444 F.2d 38, 46 (5th Cir. 1971) (citing *Delaney*, 396 S.W.2d at 860).  The Fifth Circuit has

stated that "*Delaney* makes it abundantly clear that in order for the parties to be able to obtain

adjudication of their relative property rights in a Texas court, the federal district court must not retain

jurisdiction in this case."  *Barrett*, 444 F.2d at 46.  In *Barrett*, the plaintiff sought equitable relief

without first filing suit in state court to resolve state law issues that would obviate the need to

consider the federal constitutional claims, so a *Pullman* dismissal was appropriate.  *Id.* at 40.  In

contrast, Plaintiffs seek legal relief in this case.  The viability of Plaintiffs' federal constitutional

claims is intimately connected with the resolution of novel state law issues involved in the state court

litigation.  Both *Pullman* and *Burford* abstention would be appropriate in this case; however, *Barrett*

strongly suggests that the Court cannot stay this case pending resolution of the state court litigation.

Based on *Delaney* and *Barrett*, the Court concludes that a *Burford* stay is unavailable in this case.[5]

**E.     Plaintiffs' federal takings claim is DISMISSED WITHOUT PREJUDICE because it is not ripe for adjudication.  Plaintiffs have not sought compensation in state court for the alleged taking.**

The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment, directs that "private property" shall not "be taken for public use, without just compensation." *Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226, 234 (1897). Before addressing the merits of a takings claim, the Court must be convinced that the claim in question is ripe, even if neither party has raised the issue. *Urban Developers, L.L.C. v. City of Jackson, Miss.*, 468 F.3d 281, 292 (5th Cir. 2006); *Samaad v. City of Dallas*, 940 F.2d 925, 933 (5th Cir.1991). In this case, Defendants have raised the ripeness issue.  Ripeness is a question of law that implicates this court's subject matter jurisdiction. *Urban Developers*, 468 F.3d at 292; *Sandy Creek Investors, Ltd. v. City of Jonestown, Tex.*, 325 F.3d 623, 626 (5th Cir. 2003); *Groome Res. Ltd., L.L.C. v. Parish of Jefferson*, 234 F.3d 192, 198-99 (5th Cir. 2000).

There are two independent prudential hurdles to a regulatory takings claim brought against a state entity in federal court.  *Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725, 733 (1997). *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City* explained that a plaintiff must demonstrate that she has both received a "final decision regarding the application of the [challenged] regulations to the property at issue" from "the government entity charged with implementing the regulations" and sought "compensation through the procedures the State has

---

[5]The Court respectfully disagrees with our sister court's holding to the contrary. *See Guadalupe County Groundwater Conservation Dist.*, 343 F. Supp.2d at 583.

provided for doing so."⁶ *Suitum*, 520 U.S. at 734 (citing *Williamson County*, 473 U.S. 174, 186 & 194 (1985)).

In adopting the first prong, the Fifth Circuit explained its reluctance to hear premature takings claims as follows:

> This Court consistently has indicated that among the factors of particular significance in the [*Penn Central*] inquiry are the economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations. Those factors simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question.

*Urban Developers*, 468 F.3d at 293 (citing *Williamson County*, 473 U.S. at 189-90). The Fifth Circuit has strictly construed the finality prong. For example, a property owner alleging a takings claim must seek "variances or waivers, when potentially available, before a court will hear their takings claims." *Urban Developers*, 468 F.3d at 293. The Fifth Circuit has held that "whenever the property owner has ignored or abandoned some relevant form of review or relief, such that the takings decision cannot be said to be final, the takings claim should be dismissed as unripe." *Id.* (citing *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1041 (5th Cir.1998)).

A court should dismiss a case for lack of ripeness "when the case is abstract or hypothetical." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586 (5th Cir.1987). "The

---

⁶Exhaustion of state remedies is ordinarily not required for actions brought pursuant to 42 U.S.C. § 1983. *Patsy v. Board of Regents*, 457 U.S. 496, 516 (1982). However, the Supreme Court has held that "[t]he question whether administrative remedies must be exhausted is conceptually distinct . . . from the question whether an administrative action must be final before it is judicially reviewable," *Williamson County*, 473 U.S. at 192, and that ripeness of claims like this one may therefore be predicated on obtaining a final determination regarding permitted uses. *Id.* at 193. The Supreme Court also held that the language of the Fifth Amendment requires property owners to utilize procedures for obtaining just compensation before alleging a taking in a section 1983 action. *Id.* at 194 n. 13.

key considerations are 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.' " *Id.* "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.' " *Texas v. United States*, 523 U.S. 296, 300 (1998).

The Court concludes that state law is unclear as to whether Plaintiffs have satisfied the finality element of their takings claim.  At the hearing, the parties vigorously disputed whether the January 2005 Board vote was final even though a permit has never been issued.  Defendants' counsel testified that the decision of the Board is not final until Plaintiffs pay the required fees, obtain the permits, request a rehearing, and then obtain a ruling on the request for rehearing.  In response, Plaintiffs' counsel cited a letter written by the District's General Manager to Plaintiffs' former counsel stating that the January 2005 Board decision was final.  District Rule 17.10 states that "a decision of the Board concerning a hearing matter may be appealed by requesting a hearing before the Board within 20 calender days of the date of the Board's decision."  A rehearing request is mandatory before Plaintiffs may appeal to the state district court. *Id.* On the other hand, interim authorization to pump groundwater is based on the date that a permit is issued or denied, not the date the Board's decision is made.  District Rule 9.09(C), 9.10(C).  The finality of the January 2005 Board decision is undoubtedly relevant to the merits of Defendants' interlocutory appeal of the state court's denial of their plea to the jurisdiction.  The Court finds it unnecessary to resolve this novel issue of state law because it is clear that Plaintiffs have not sought compensation on their takings claim in state court.

Plaintiffs have not asserted their takings claim in state court under article I, section 17 of the Texas Constitution.  In *Barshop*, the Texas Supreme Court stated the following:

-24-

Assuming without deciding that Plaintiffs possess a vested property right in the water beneath their land, the State still can take the property for a public use as long as adequate compensation is provided . . . . [W]e must assume that the Legislature intends to compensate Plaintiffs for any taking that occurs. As long as compensation is provided, the Act does not violate article I, section 17 [of the Texas Constitution]. . . . If an individual landowner's property is taken and no compensation is provided, that landowner may then bring a challenge to the Act as it is applied or pursue other possible remedies. It will be the landowner's burden to establish a vested property right in the underground water which the Authority eviscerated. The landowner will also have to prove damages and the failure to receive adequate compensation from the State. If a landowner establishes such a case, then the Act may be held unconstitutional "as applied."

925 S.W.2d at 630-31. Although the Texas Supreme Court was addressing the facial constitutionality of the Edwards Aquifer Act ("EAA") in *Barshop*, this Court has no reason to believe that the Texas Supreme Court would limit the availability of state takings claims to EAA permit applicants.  If Plaintiffs do have a cognizable property interest in the groundwater beneath their land, which this Court does not decide, then the language of *Barshop* strongly indicates that landowners in Texas may assert a groundwater takings claim under article 1, section 17 of the Texas Constitution.[7]  On the other hand, if Plaintiffs do not have a cognizable property interest in the groundwater beneath their land, then their takings and substantive due process claims fail as a matter of law because there was no deprivation of property.  Plaintiffs argue that they have no state court

---

[7]The Court does not believe that the Texas Supreme Court decision of *Bragg v. Edwards Aquifer Authority*, 71 S.W3d 729 (Tex. 2002), conclusively establishes that plaintiffs have no state court remedy for a regulatory taking of groundwater in Texas.  *Bragg* held that a GCD does not need to prepare a takings impact assessment ("TIA") under the Texas Property Rights Act when making groundwater permitting decisions.  *Id.* at 738; TEX. GOV'T CODE § 2007.003(b)(11)(C).  However, the remedies provided by the Texas Property Rights Act are not exclusive, and Texas courts have ordered compensation for regulatory takings that are exempt from the Texas Property Rights Act. Govt. TEX. GOV'T CODE § 2007.006; *see Town of Flower Mound v. Stafford Estates L.P.*, 71 S.W.3d 18, 28 & 37 (Tex. App.–Fort Worth 2002, pet. granted and judgment affirmed, 135 S.W.3d 620 (Tex. 2004)) (holding that a city zoning regulation was exempt from the Texas Property Rights Act but still constituted a taking under article I, section 17 of the Texas Constitution and the Fifth Amendment of the United States Constitution).

remedy for the taking; however, they cite to no binding authority for this argument.  Although the

Court acknowledges that our sister district court previously ruled that an inverse condemnation claim

is not available in Texas to recover money damages for an alleged groundwater taking, this holding

did not address *Barshop* and did not address whether other avenues of relief might be available to

Plaintiffs in state court to obtain just compensation for the alleged taking.[8]  *See Guadalupe County*

*Groundwater Conservation Dist.*, 343 F. Supp.2d at 598-99.

     Recently, the Texas Supreme Court summarized its takings jurisprudence as follows:

---

[8]This Court respectfully disagrees with our sister court's conclusion than an inverse condemnation suit is not available to remedy a regulatory taking of groundwater in Texas.  The Texas Supreme Court has recognized that an inverse condemnation suit is available to remedy other regulatory takings. *See Westgate, Ltd. v. State*, 843 S.W.2d 448, 452 (Tex. 1992) ("An inverse condemnation may occur when the government physically appropriates or invades the property, or when it unreasonably interferes with the landowner's right to use and enjoy the property, such as by restricting access or denying a permit for development").  Our sister court relied entirely on section 36.105 of the Texas Water Code in arriving at its conclusion that an inverse condemnation suit is not available. Section 36.105 states that a GCD cannot obtain rights to groundwater through the use of imminent domain; that statute does not address whether a landowner may pursue an inverse condemnation suit involving an alleged regulatory taking of groundwater. The Texas Supreme Court has suggested that the availability of a regulatory takings claim has nothing to do with the exercise of imminent domain or condemnation. *Sheffield Development Co. Inc. v. City of Glenn Heights*, 140 S.W.3d 660, 669-70 (Tex. 2004).  In the regulatory context, the government does not "take" your property through imminent domain or condemnation, it "takes" your property through regulations that go "too far" and become "too much like a physical taking." *Id.* at 671-72; *see John Corp. v. City of Houston*, 214 F.3d 573, 578 (5th Cir. 2000) ("The Supreme Court's entire "regulatory takings" law is premised on the notion that a city's exercise of its police powers can go too far, and if it does, there has been a taking").  The United States Supreme Court has noted that "[w]hile the typical taking occurs when the government acts to condemn property in the exercise of its power of eminent domain, the entire doctrine of inverse condemnation is predicated on the proposition that a taking may occur without such formal proceedings." *First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 316 (1987); *see also John Corp. v. City of Houston*, 214 F.3d 573, 578-79 (5th Cir. 2000) ("Thus, simply because the City did not formally use its powers of eminent domain to destroy Appellants' property does not mean that its actions could not amount to a taking requiring just compensation").  The Court is not holding that an inverse condemnation suit is definitely available to compensate plaintiffs for regulatory takings of groundwater in Texas; the Court only finds that Texas law is unclear and such a remedy might be available.

Article I, section 17 of the Texas Constitution provides that "[n]o person's property shall be taken, damaged or destroyed or applied to public use without adequate compensation being made . . . ."  Absent a cognizable property interest, a claimant is not entitled to compensation under article I, section 17.  Although Texas' takings provision is worded differently than the Takings Clause of the Fifth Amendment to the United States Constitution, the Texas Supreme Court has described it as "comparable" and the parties here agree that it is appropriate to look to federal cases for guidance. Both provisions recognize that, while "'all property is held subject to the valid exercise of the police power,'" a regulation may, under some circumstances, constitute a taking requiring compensation. "Physical possession is, categorically, a taking for which compensation is constitutionally mandated . . . ." Regulatory action short of physical confiscation or invasion may also result in a taking.  A regulation that deprives a property owner of all economically beneficial or productive use of the property "makes the regulation categorically a taking." Lesser interferences, however, may also result in a taking. These types of regulatory actions require an "essentially ad hoc, factual inquir[y] . . . ."

A regulation may go so far in imposing public burdens on private interests as to require compensation. In deciding whether regulatory action goes "too far," we carefully weigh "all the relevant circumstances," including:

(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action.

The extent of the governmental intrusion may be a question for the trier of fact, but whether the facts constitute a taking is a question of law.

*Hallco Texas, Inc. v. McMullen County*, No. 02-1176, 2006 WL 3825298, *4-*5 (Tex. Dec. 29, 2006) (internal citations omitted).  The Court believes that Plaintiffs' takings claim involves several novel issues of state law. For example, the Texas Supreme Court has not addressed the scope of a landowners' "cognizable property interest" in groundwater beneath their land. *See* TEX. WATER CODE § 36.002; *see Barshop*, 925 S.W.2d at 630 ("Assuming without deciding that Plaintiffs possess a vested property right in the water beneath their land . . . ."). More importantly, the Texas Supreme Court has never engaged in the "ad hoc, factual inquiry" presumably applicable to as-applied regulatory takings claims involving groundwater. *See Sheffield Development Co.*, 140 S.W.3d at

675-80 (engaging in ad hoc, factual inquiry into whether zoning restrictions constituted a compensable regulatory taking). In this case, Plaintiffs bear the burden of proving that they have sought "compensation through the procedures the State has provided for doing so." Plaintiffs have failed to carry this burden.

"[B]efore a takings claim is ripe, the claimant must unsuccessfully seek compensation. Short of that, it must be certain that the state would deny that claimant compensation were he to undertake the obviously futile act of seeking it." *Samaad v. City of Dallas*, 940 F.2d 925, 934 (5th Cir.1991). Absent binding legal authority to the contrary, this Court refuses to hold that a compensatory remedy does not exist for a regulatory taking of groundwater in Texas or that pursuit of such a remedy would be obviously futile. Although *Barshop* posed the question, it did not give the answer. Resolution of this issue at the state level will also address the more fundamental issue of whether Texas landowners subject to regulation by GCDs have a cognizable property interest in the groundwater beneath their land. The Texas Supreme Court recently held that regulation allowing for some productive or economically beneficial use of land "effects a taking if it does not substantially advance legitimate state interests." *Sheffield Development Co.*, 140 S.W.3d at 671, 675. This Court cannot evaluate Plaintiffs' federal regulatory taking claim until Plaintiffs demonstrate that they have been denied compensation after pursuing available state procedures. A state's compensation procedure is adequate even though the law is unsettled whether the claimant would be entitled to compensation; inadequate procedures are only those that "almost certainly" will not justly compensate the claimant. *Samaad*, 940 F.2d at 934. Plaintiffs have not demonstrated that they have been denied just compensation, and the Court cannot conclude that Plaintiffs "almost certainly" will be denied such compensation. Consequently, the Court finds that Plaintiffs' Fifth Amendment

takings claim must be DISMISSED WITHOUT PREJUDICE because it is not ripe for adjudication.[9]

**F.    Plaintiffs' procedural due process, substantive due process, and equal protection claims brought under section 1983 are DISMISSED WITHOUT PREJUDICE because they are not ripe for adjudication.**

**1.    Procedural due process claim.**

Plaintiffs claim that they were not afforded procedural due process throughout the permitting process, which resulted in a taking of their property. Complaint, ¶ 42 ("Such actions constitute a taking of Plaintiffs' property without substantive or procedural due process"). The Fifth Circuit has held that a procedural due process claim related to a takings claim does not ripen until the plaintiff first pursues compensation at the state level. *See John Corp.*, 214 F.3d at 585 ("The takings claim is not yet ripe, and . . . when a court . . . assess[es] the takings claim . . . it will also be able to examine whether Appellants were afforded less procedure than is constitutionally required"); *see Zinermon v. Burch*, 494 U.S. 113, 25 (1990) (holding that procedural due process claims require exhaustion of state procedures).  Plaintiffs procedural due process claim is not ripe because "additional factual development is necessary." *John Corp.*, 214 F.3d at 586.  This Court has already determined that Plaintiffs have not pursued compensation at the state level.  Plaintiffs have not alleged that the denial of procedural due process "inflicted an injury separate from any takings claim;" consequently, the procedural due process claim is DISMISSED WITHOUT PREJUDICE because it is not ripe for adjudication. *Id.*

---

[9]In another groundwater dispute pending before this Court, Defendant Edwards Aquifer Authority has informed the Court that it is currently defending a constitutional takings claim brought by a landowner in state court. *See Bragg v. Edwards Aquifer Authority*, No. SA-06-CV-1129-XR, Docket No. 17, Pg. 3 (filed March 2, 2007).

2.        **Substantive Due Process Claim.**

A federal court may entertain a substantive due process claim even though the court dismisses a related regulatory takings claim as unripe.  *FM Properties Operating Co. v. City of Austin*, 93 F.3d 167, 171 n.5 (5th Cir. 1996); *see Simi Inv. Co., v. Harris County, Tex.*, 236 F.3d 240, 248 (5th Cir. 2000) ("[A] more explicit [constitutional] provision does not necessarily preempt due process protections, and that substantive due process claims can survive a related takings argument").  However, a plaintiff must carry a heavy burden in order to prevail on such claims.  The Fifth Circuit stated that "when challenges to such land-use decisions aspire to constitutional stature, we view those decisions as 'quasi-legislative' in nature, and thus sustainable against a substantive due process challenge if there exists therefor 'any conceivable rational basis.'" *FM Properties*, 93 F.3d at 174.  In other words, such government action comports with substantive due process if the action is rationally related to a legitimate government interest. *Id.* Only if such government action is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare," may it be declared unconstitutional. *Id.*  If the question is at least debatable, there is no substantive due process violation.  *Id.* at 175. A violation of state law is alone insufficient to state a constitutional claim under the Fourteenth Amendment.  *Id.* at 174. Rational basis review under the Due Process Clause of the Fourteenth Amendment does not authorize the federal judiciary to sit as a super-legislature to judge the wisdom or desirability of state legislative policy determinations. *Id.* at 175.

The Fifth Circuit has refused to adopt a "blanket rule" that a takings claim subsumes any substantive due process claim related to a deprivation of property.  *John Corp.*, 214 F.3d at 583. Instead, a careful analysis must be undertaken to assess the extent to which a plaintiff's substantive

due process claim rests on protections that are also afforded by the takings clause. *Id.* In *John Corp.*, the Fifth Circuit held that the plaintiff's substantive due process and equal protection claims were not subsumed into a dismissed takings claim because the due process and equal protection claims asserted rights not protected by the takings claim. *Id.* at 585. In contrast, when a substantive due process claim only asserts rights protected by the takings clause, the Fifth Circuit has dismissed that substantive due process claim as unripe. *Rolf v. City of San Antonio*, 77 F.3d 823, 827 (5th Cir. 1996); *see Simi*, 236 F.3d at 249 ("[W]e find only that when a state interferes with property interests, a substantive due process claim *may* survive a takings analysis and, therefore, provide jurisdiction for a federal court") (emphasis in original). In *John Corp.*, the plaintiff's substantive due process claim asserted that a city ordinance was unconstitutionally vague, which is a right not protected by the takings clause, so the Fifth Circuit held that the claim was ripe despite the fact that the plaintiff's takings claim was not. 214 F.3d at 585.

All substantive due process claims related to takings claims are subject to the finality requirement applicable to the related takings claims. *Simi*, 236 F.3d at 585 n.13. Additionally, to prevail on a substantive due process claim, Plaintiffs must also establish that they "held a constitutionally protected property right to which the Fourteenth Amendment due process protection applies." *Id.* at 249-50. The Court has already indicated its unwillingness to address the merits of the finality issue and the scope of the "cognizable property interest" held by Texas landowners in groundwater. The Court believes that it can resolve this case without addressing these novel issues of state law.

The Court concludes that Plaintiffs' substantive due process claim does not survive the dismissal of their takings claim. In *Simi*, the Fifth Circuit found that the substantive due process

claim survived the dismissal of the takings claim because of the "particularly odd factual situation" that involved "blatant governmental interference with property rights." *Id.* at 249. In *Simi*, the plaintiff alleged that Harris County "abused its power to frustrate Simi's rightful use" of its land and "wrongfully interfered with Simi's right of access for no legitimate public purpose." *Id.* at 248 n.12. Simi's "precise [substantive due process] claim is that the County arbitrarily interfered with its property rights, not that the County sought to acquire or regulate the use of the property." *Id.* In contrast, this case does involves regulation of real property. The Fifth Circuit concluded that Simi's substantive due process claim asserted rights not protected by the takings clause. In *Simi*, the Fifth Circuit found a violation of substantive due process because the County had created a 5-foot by 3,000-foot park solely to deny street access to the Simi property, thus enhancing the value of nearby properties. 236 F.3d at 253-54. The Court concluded that the County arbitrarily and capriciously created a "nonexistent park" to benefit solely private property interests. *Id.* at 254.

The Court finds that Plaintiff's substantive due process claim does not assert a right not protected by the takings clause. Unlike the plaintiff in *John Corp.*, Plaintiffs did not allege that a state statute was unconstitutionally vague. Plaintiffs appear to argue that their substantive due process claim is analogous to the claim in *Simi*. The Court disagrees. Unlike *Simi*, this case fundamentally boils down to a controversy over land regulation. The *Simi* Court concluded that the defendant had created a "nonexistent park" to benefit solely private interests. *Id.* at 254. In this case, the District is merely attempting to regulate the use of Plaintiffs' property by limiting groundwater withdrawal. This case is a takings case. The facts of this case are distinguishable from the facts of *John Corp.* and *Simi*. Consequently, Plaintiffs' substantive due process claim is DISMISSED

WITHOUT PREJUDICE because it is not ripe for adjudication.[10]

###### 3. Equal Protection Claim.

The Court will dismiss Plaintiffs' equal protection claim for the same reasons that it dismissed Plaintiffs' substantive due process claim. Plaintiffs allege that they were denied equal protection in the permitting process. The Court does not believe that Plaintiffs' equal protection claim asserts rights not protected by the takings clause. *John Corp.*, 214 F.3d at 585. Allowing Plaintiffs' equal protection claim to proceed will result in the premature, piecemeal litigation of this case.[11] Furthermore, it is unclear whether Plaintiffs have received a final decision from the Board on their permit applications. Consequently, Plaintiffs' equal protection claim is DISMISSED WITHOUT PREJUDICE because it is not ripe for adjudication.

### G. Plaintiffs' section 1985 claim is DISMISSED WITH PREJUDICE for failure to state a claim upon which relief may be granted.

To maintain a claim under section 1985(3), a plaintiff must allege that "(1) the defendants conspired (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and (3) one or more of the conspirators committed some act in furtherance of the conspiracy; whereby (4) another person is injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States; and (5) the action of the conspirators is motivated by

---

[10]To the extent that Plaintiffs base their substantive due process claims on mere violations of state law, they fail to state a claim upon which relief may be granted. *FM Properties*, 93 F.3d at 174.

[11]The Court finds that *Rolf v. City of San Antonio* is distinguishable from this case because in *Rolf*, the surviving equal protection claim was intimately related to a surviving first amendment retaliation claim. *See* 77 F.3d at 827-28. In contrast, the equal protection claim in this case is intimately related to a takings claim that has been dismissed without prejudice as unripe.

racial animus." *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 n.12 (5th Cir. 2001)

(quoting *Wong v. Stripling*, 881 F.2d 200, 202-3 (5th Cir.1989)).  Plaintiffs have not alleged the

existence of "a race-based conspiracy;" therefore, Plaintiff's section 1985(3) claim is DISMISSED

WITH PREJUDICE for failure to state a claim upon which relief may be granted.  *Id.* at 271.

**H.      The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law
         tortious interference claims.**

        The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law tortious

interference claims because the claims raise novel issues of state law and the Court has dismissed

all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(1), (c)(3).  Plaintiffs' state law

tortious interference claims are DISMISSED WITHOUT PREJUDICE.

### III. Conclusion

        Defendants' motions to dismiss are GRANTED (Docket Nos. 5& 6). Plaintiffs' federal

takings claim, procedural due process claim, substantive due process claim, and equal protection

claim are DISMISSED WITHOUT PREJUDICE because they are not ripe for adjudication.

Plaintiffs' section 1985 claim is DISMISSED WITH PREJUDICE for failure to state a claim upon

which relief may be granted.   The Court refuses to exercise supplementary jurisdiction over

Plaintiffs' state law tortious interference claims; therefore, those claims are DISMISSED WITHOUT

PREJUDICE. The Court expresses no opinion on Defendants' quasi-judicial and quasi-legislative

absolute immunity arguments. The Clerk is instructed to close this case.

        SIGNED this 12 day of March, 2007.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

-34-